1   Hans W. Herb (SBN 136018)
    LAW OFFICE OF HANS W. HERB
2   P.O. Box 970
    Santa Rosa, CA  95402
3   Telephone:  (707) 576-0757
    Email:  hans@tankman.com
4
    Craig A. Brandt (SBN 133905)
5   LAW OFFICE OF CRAIG A. BRANDT
    5354 James Avenue
6   Oakland, CA  94618
    Telephone:  (510) 601-1309
7   Email:  craigabrandt@att.net

8   Attorneys for Plaintiff
    EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC

9

10

11                        UNITED STATES DISTRICT COURT

12                        EASTERN DISTRICT OF CALIFORNIA

13

14

15   EDEN ENVIRONMENTAL CITIZEN'S       )   Case No.:
     GROUP, LLC, a California limited liability )
16   company,                           )   **COMPLAINT FOR INJUNCTIVE AND**
                                         )   **DECLARATORY RELIEF, CIVIL**
17                    Plaintiff,         )   **PENALTIES AND REMEDIATION**
                                         )
18              vs.                      )   **(Federal Water Pollution Control Act, 33**
                                         )   **U.S.C. §§1251 et seq.)**
19                                       )
     EURO AUTO RECYCLING, a California   )
20   corporation; VARDAN SARGSYAN, an    )
     individual; and DOES 1-10, inclusive, )
21                                       )
                                         )
22                    Defendants.        )
                                         )
23                                       )
                                         )
24   _____ )

25

26          Plaintiff EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC ("EDEN") hereby

27   brings this civil action pursuant to the Federal Water Pollution Control Act, also known as the

28   Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*

                              COMPLAINT – Page 1

**INTRODUCTION**

1.      This action is a citizen suit for injunctive relief, declaratory relief, civil penalties, and remediation against Defendants for current and ongoing violations of the National Pollutant Discharge Elimination System ("NPDES") permit requirements of the CWA.

2.      On or about December 6, 2018, EDEN provided a Notice of Defendants' violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board") and (4) to Defendants, including a copy delivered to the Facility Manager of Defendant EURO AUTO RECYCLING, by certified mail, at 3527 Recycle Road, Rancho Cordova, California ("the Facility"), as required by the CWA. 33 U.S.C. § 1365(b)(1)(A).

3.      A copy of EDEN's Notice of Intent to Sue is attached hereto as Exhibit "A" and incorporated herein by reference.

4.      More than sixty days have passed since EDEN's Notice was properly and lawfully served on Defendants, the State Board, and the Regional and National EPA Administrators.  EDEN is informed and believes, and thereupon alleges, that neither the National EPA, nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal question), and 33 U.S.C. section 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. sections 2201-2202 (declaratory relief), 33 U.S.C. sections 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. sections 1319(d), 1365(a) (civil penalties).

6.     Venue is proper because Defendants reside in and the events or omissions giving rise to EDEN's claims occurred in this District. 28 U.S.C. §1391(b)(1), (2). Venue is also proper because the Facility's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

## PARTIES

7.     Plaintiff EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC ("EDEN") is an environmental membership group organized under the laws of the State of California as a limited liability company on June 22, 2018.  EDEN's organizational purpose is the protection, preservation and enhancement of California's waterways.   Its mission is implemented by enforcing the provisions of the Federal Clean Water Act and California's Industrial General Permit by seeking redress from environmental harms caused by Industrial Dischargers who pollute the Waters of the United States, through community education and citizen suit enforcement when necessary.

8.     EDEN's members donate their time and money resources to protect, enhance, and assist in the preservation and restoration of rivers, creeks, streams, wetlands, vernal pools, and their tributaries located in California.

9.     EDEN previously existed as an unincorporated environmental citizen's association from June 1, 2014, through June 21, 2018, with members who remain associated with EDEN as of the date of the filing of this Complaint.

10.     EDEN has members throughout northern California.  Some of EDEN's members reside and work near the Sacramento River (the "Receiving Waters" for Defendant EURO AUTO RECYCLING's Facility storm water run-off), and use those waters and their watersheds for surfing, kayaking, camping, cycling, recreation, sports, fishing, swimming, hiking, photography, nature walks and scientific study.  Their use and enjoyment of these natural resources are specifically adversely impaired by Defendants' failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act.

11.     EDEN has standing as an association to bring this suit against Defendants, as at least one of EDEN's current members is experiencing ongoing and continuing harm particular to him or her as a specific result of Defendants' violations of the CWA, and the resulting adverse effects to the environment and the Receiving Waters downstream from the Facility, and has experienced such harm since at least the date that EDEN provided to Defendants a 60-day Notice of Intent to Sue.

12.     Defendants' ongoing violations of the General Permit and the CWA will cause irreparable harm to EDEN and certain of its current members, for which they have no plain, speedy, or adequate remedy.  The relief requested will redress the ongoing injury in fact to EDEN and its members.  Litigation of the claims asserted and relief requested in this Complaint will not require the participation in this lawsuit of individual members of EDEN.

13.     EDEN is informed and believes, and on such information and belief alleges, that Defendant EURO AUTO RECYCLING, located at 3527 Recycle Road, in Rancho Cordova, California, was formed on or about February 17, 2016 as a California corporation, and is identified in the Regional Board's records as the Industrial General Permit applicant and operator of the Facility.

14.     EDEN is informed and believes, and on such information and belief alleges that Defendant VARDAN SARGSYAN is the President and Legally Responsible Person for the Facility according to the documents on file with the Regional Board and the Secretary of State.

### STATUTORY BACKGROUND

15.     Congress declared that the Federal Clean Water Act was designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through federal and state cooperation to develop and implement "programs for preventing, reducing, or eliminating the pollution of navigable waters and ground waters." 33 U.S.C. §§ 1251(a), 1252(a).

16.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

17.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. 33 U.S.C. § 1342(p). States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance

of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(p).

18.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

General Permit

19.     The State Board elected to issue a statewide general permit for industrial storm water discharges. The State Board originally issued the General Permit on November 19, 1991, and modified it on September 17, 1992.   The State Board reissued the General Permit on April 17, 1997, and again on April 1, 2014 (the "2015 Permit" or "General Permit"), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p). The 1997 Permit was in effect between 1997 and June 30, 2015.  The 2015 Permit went into effect on July 1, 2015.  The 2015 Permit maintains or makes more stringent the same requirements as the 1997 Permit.

20.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit. 33 U.S.C. § 1311(a).

21.     The General Permit contains several prohibitions. Effluent Limitation V(A) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  Discharge Prohibition III(C) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

22.     Receiving Water Limitation VI(B) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment. Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

23.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities discharging, or having the potential to discharge, storm water associated with industrial activity which have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent to Comply ("NOI").  Dischargers have been required to file NOIs since March 30, 1992.

24.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP"). The SWPPP must describe storm water control facilities and measures that comply with the BAT and BCT standards.  The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges and authorized non-stormwater discharges from the facility, and to implement best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges. General Permit, § X(C). These BMPs must achieve compliance with the General Permit's effluent limitations and receiving water limitations, including the BAT and BCT technology mandates.

25.     To ensure compliance with the General Permit, the SWPPP must be evaluated and revised as necessary. General Permit, § X(B).

26.     Failure to develop or implement an adequate SWPPP, or to update or revise an existing SWPPP as required, is a violation of the General Permit. General Permit, Fact Sheet §I(1).

27.     Sections X(D) – X(I) of General Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a pollution prevention team; a site map; a list of significant materials handled and stored at the site; a description of potential pollutant sources; an assessment of potential pollutant sources; and a description of a specific mandatory set of minimum BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-stormwater discharges.

28.     The General Permit further requires dischargers to implement and maintain, to the extent feasible, any one or more of the following advanced BMPs necessary to reduce or prevent discharges of pollutants in industrial storm water discharges: exposure minimization BMPs, storm water containment and discharge reduction BMPs, treatment control BMPs, and other advanced BMPs.  General Permit, § X(H)(2).  Failure to implement advanced BMPs as necessary to achieve compliance with either technology or water quality standards is a violation of the General Permit.

29.     The General Permit also requires that the SWPPP include BMP Descriptions and a BMP Summary Table.  General Permit, § X(H)(4), (5).

30.     The General Permit requires dischargers to develop and implement an adequate written Monitoring and Reporting Program. The primary objective of the Monitoring and Reporting Program is to detect and measure the concentrations of pollutants in a facility's

discharge to ensure compliance with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.

31.     As part of their monitoring program, Dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.

32.     Section XI(B) of the General Permit requires that Dischargers collect and analyze storm water samples from two qualifying storm events ("QSEs") during the first half of each reporting year (July 1 to December 31) and two QSEs during the second half of each reporting year (January 1 to June 30), and that the samples be collected from all outfalls identified in the Facility SWPPP.

33.     A QSE is a precipitation event that produces a discharge for at least one drainage area and is preceded by 48 hours with no discharge from any drainage area.  General Permit §XI(B)(2)

34.     Once the storm water samples have been collected, the General Permit requires that the Discharger deliver the samples to a qualified laboratory for analysis within 48 hours of collection (General Permit, Attachment H) and upload into SMARTS the resulting laboratory reports within 30 days from receipt of the report.  General Permit § XI(B)(4)

35.     Facilities are also required to make monthly visual observations of storm water discharges. The visual observations must represent the quality and quantity of the facility's storm water discharges from the storm event.  General Permit, § XI(A)

36.     The General Permit requires operators to conduct an Annual Comprehensive Facility Compliance Evaluation ("Annual Evaluation") that evaluates the effectiveness of

current BMPs and the need for additional BMPs based on visual observations and sampling and analysis results. General Permit, § XV.

37.     Under the General Permit, facilities must analyze storm water samples for pH, oil & grease and total suspended solids, as well as additional parameters indicated in the Permit by facility type and those parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment.  General Permit, § XI(B)(6)(c).

38.     The US EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. These benchmarks represent pollutant concentrations at which a storm water discharge could potentially impair, or contribute to impairing, water quality, or affect human health from ingestion of water or fish.

39.     The Numeric Action Levels ("NALs") in the General Permit are derived from these benchmarks. The Permit incorporates annual NALs, which are derived from the 2008 MSGP benchmark values, and instantaneous maximum NALs, which are derived from a Water Board dataset.

40.     The following annual NALs have been established under the General Permit for pollution parameters applicable to the Facility: pH – 6.0 - 9.0 standard units ("S.U."); total suspended solids ("TSS") – 100 mg/L; oil & grease ("O&G") – 15 mg/L; iron – 1.0 mg/L, aluminum – .75 mg/L and lead – .262 mg/L.

41.     An exceedance of an annual NAL occurs when the average of all samples obtained for an entire facility during a single reporting year is greater than a particular annual NAL. The reporting year runs from July 1 to June 30.  An instantaneous maximum NAL

exceedance occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value (for TSS and O&G) or are outside of the instantaneous maximum NAL range for pH.  General Permit §XII(A)

42.     When a discharger exceeds an applicable NAL, it is elevated to "Level 1 Status," which requires a revision of the SWPPP and additional BMPs. If a discharger exceeds an applicable NAL during Level 1 Status, it is then elevated to "Level 2 Status."  General Permit § XII(C)

43.     For Level 2 Status, a discharger is required to submit an Action Plan requiring a demonstration of either additional BMPs to prevent exceedances, a determination that the exceedance is solely due to non-industrial pollutant sources, or a determination that the exceedance is solely due to the presence of the pollutant in the natural background.  General Permit §XII(D)

44.     Section XVI(A) of the General Permit requires that all Dischargers must certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS.

45.     Furthermore, Section XXI(L) of the General Permit provides that all documents submitted to SMARTS, including SWPPPs and Annual Reports, be certified by a legally responsible party or duly authorized representative of the Facility, with the following certification:

"I certify under penalty of law that this document and all Attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or those persons directly responsible for gathering the information, to the best of my knowledge and belief, the information submitted is, true,

accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

46.     Section XXI(N) of the General Permit provides that any person who knowingly makes any false material statement, representation, or certification in any record or other document submitted or required to be maintained under the General Permit, including reports of compliance or noncompliance shall upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both.  *See* also Clean Water Act section 309(c)(4)

Central Valley Region Basin Plan

47.     The Regional Board has identified beneficial uses of the Central Valley Region's waters and established water quality standards for the Sacramento River and its tributaries and the Sacramento-San Joaquin Delta in "The Water Quality Control Plan (Basin Plan) for the California Regional Water Quality Control Board, Central Valley Region – *The Sacramento River Basin and The San Joaquin River Basin*," generally referred to as the Basin Plan, and the "Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary."

48.     The beneficial uses of these waters include, among others, domestic and municipal supply, water contact recreation, non-contact water recreation, wildlife habitat, warm and cold freshwater habitat, and fish spawning. The non-contact water recreation use is defined as "uses of water for recreational activities involving proximity to water, but where there is generally no body contact with water, nor any likelihood of ingestion of water. These uses include, but are not limited to, picnicking, sunbathing, hiking, camping, boating. . . hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities."

49.     The Basin Plan includes a narrative toxicity standard which states that all waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life.

50.     The Basin Plan provides that water shall not contain floating material in amounts that cause nuisance or adversely affect beneficial uses.

51.     The Basin Plan provides that water shall be free of discoloration that causes nuisance or adversely affects beneficial uses.

52.     The Basin Plan provides that waters shall not contain suspended materials in concentrations that cause nuisance or adversely affect beneficial uses.

53.     The Basin Plan also prohibits the discharges of oil and grease, stating that waters shall not contain oils, greases, waxes, or other materials in concentrations that cause nuisance, result in a visible film or coating on the surface of the water or on objects in the water, or otherwise adversely affect beneficial uses.

54.     The Basin Plan provides that at a minimum, water designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the maximum contaminant levels (MCLs) specified in the following provisions of Title 22 of the California Code of Regulations, which are incorporated by reference into this plan: Tables 64431-A (Inorganic Chemicals) and 64431-B (Fluoride) of Section 64431, Table 64444-A (Organic Chemicals) of Section 64444, and Tables 64449-A (Secondary Maximum Contaminant Levels-Consumer Acceptance Limits) and 64449-B (Secondary Maximum Contaminant Levels-Ranges) of Section 64449.

55.     Title 22 of the California Code of Regulations provides a MCL for aluminum of 1.0 mg/L, for Cadmium of .01 mg/L, and lead of .05 mg/L.

56.     The Basin Plan provides that the pH shall not be depressed below 6.5 nor raised above 8.5; that iron levels not exceed .30 mg/L; that zinc not exceed .10 mg/L; that copper not exceed .0056 mg/L, and that cadmium not exceed .00022 mg/L.

57.     The Basin Plan requires that waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses."

58.     Table III-1 of the Basin Plan provides a water quality objective ("WQO") for iron of 0.3 mg/L.

Citizen Suit Provision of the CWA

59.     Under the CWA, any citizen may commence a civil action against any person who is alleged to be in violation of an effluent standard or limitation under the CWA or an Order issued by a State with respect to such a standard or limitation." 33 U.S.C. §1365(a)(1). No action may be commenced prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator of the EPA, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(A).  By including a citizen suit provision in the CWA, Congress ensured that the purposes and requirements of the CWA would be enforced, either by the United States government or by concerned citizens.

60.     In furtherance of the water preservation goals established by the CWA, the citizen suit provision confirms the district court's jurisdiction to apply any appropriate civil penalties under section 1319(d).  33 U.S.C. § 1365(a). Section 1319(d) declares that any person who violates any permit condition or limitation implementing any of such sections in an NPDES permit shall be subject to a civil penalty not to exceed $46,192 per day for each violation occurring before November 2, 2015, and $51,570.00 per day per violation for

violations occurring after November 2, 2015.   33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; General Permit XXI.Q.1.

61.     Violations of provisions of the General Permit, including those detailed below, constitute violations of the CWA and are subject to civil penalties. General Permit § XXI; 33 U.S.C. §§ 1319(d), 1342; 40 C.F.R. §§ 19.1-19.4.

## FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

62.     Defendant EURO AUTO RECYCLING is an automobile dismantling and used vehicle parts facility.  EDEN is informed and believes that the Facility falls under standard industrial classification ("SIC") code 5015.

63.     EDEN is informed and believes that EURO AUTO RECYCLING stores industrial materials outdoors, including disabled vehicles and automobile parts, that can be exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed.

64.     Based on EDEN's investigation, including a review of the Facility's Notice of Intent to Comply with the Terms of the Industrial General Permit ("NOI"), SWPPP, aerial photography, and EDEN's information and belief, storm water is collected and discharged from the Facility through a series of channels that discharge via at least one outfall.  The outfall discharges storm water and pollutants contained in that storm water into the Sacramento River, a navigable Water of the United States.

65.     Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the Facility where industrial activities occur and areas where airborne materials associated with the industrial processes at the facility may settle onto the ground. Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these

areas collects suspended sediment, dirt, oil & grease, hydraulic fluids, lead, aluminum, iron and other pollutants as it flows towards the storm water channels.

66.     On information and belief, Plaintiff alleges that there are insufficient structural storm water control measures installed at the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the management practices at the Facility are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.

Deficient SWPPP/Failure to Follow or Update SWPPP

67.     On information and belief, Plaintiff alleges that since at least August 25, 2016, Defendant has failed to implement an adequate SWPPP for the Facility.

68.     Plaintiff is informed and believes, and thereupon alleges, that the Facility's SWPPP does not set forth site-specific Best Management Practices (BMPs) for the Facility that are consistent with BAT or BCT for the Facility.

69.     Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not comply with the requirements of Sections X(G)(1)(e), X(G)(2), and X(H) of the General Permit.

70.     According to information available to EDEN, Defendant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges. Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by the General Permit.

71.     Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the Facility's SWPPP and site-specific BMPs consistent with the General Permit.

72.     In addition, Plaintiff alleges that Defendant EURO AUTO RECYCLING has failed to comply with the provisions of its current SWPPP in the areas of monitoring and reporting.

73.     Information available to EDEN indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events into the Sacramento River, including the pollutants of total suspended solids, oil & grease, automotive hydraulic fluids, lead, aluminum and iron.

74.     Information available to Plaintiff indicates that Defendant has not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all the violations alleged in this Complaint are ongoing and continuing.

Monitoring and Reporting

75.     On information and belief, EDEN alleges that EURO AUTO RECYCLING has no monitoring program at its Facility.

76.     On information and belief, EDEN alleges that since Defendants first began operating at the Facility, they have failed to collect and analyze even one Facility storm water run-off sample.

77.     On information and belief, EDEN alleges that Defendants have failed to conduct monthly visual observations of storm water discharges at the Facility since at least July 1, 2015.

Failure to File Annual Reports

78.     EDEN is informed and believes that Defendants have failed to comply with Section XVI(A) of the General Permit, which provides that Dischargers shall certify and submit

via SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS.

79.     Specifically, EURO AUTO RECYCLING's Annual Report for the reporting year 2016-17 was due on or before July 15, 2017.   To date, EURO AUTO RECYCLING's Annual Report for the 2016-17 reporting year has not been filed and is currently outstanding.

80.     Specifically, EURO AUTO RECYCLING's Annual Report for the reporting year 2017-18 was due on or before July 15, 2018.   To date, EURO AUTO RECYCLING's Annual Report for the 2017-18 reporting year has not been filed and is currently outstanding.

Failure to Implement BAT/BCT and BMPs

81.     EDEN is informed and believes that EURO AUTO RECYCLING has failed to identify and implement Best Management Practices ("BMPs") at its Facility that comply with the requirements of the General Permit for best conventional treatment (BCT) for conventional pollutants, and best available technology (BAT) for toxic and non-conventional pollutants. These technology-based pollution controls are required to be implemented in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.  General Permit §§ I(C), V(A).

82.     Specifically, the Regional Water Board inspected the Facility on December 6, 2017, and again on September 10, 2018, and observed numerous BMP deficiencies during both inspections.

83.      On December 6, 2017, the Facility was inspected by Jorge Beltran of the Central Valley Regional Water Quality Control Board.  During that inspection, Mr. Beltran observed significant spills and leaks on the ground of oil, transmission and hydraulic fluids. Further, all three storm drains were found to be in need of maintenance, and transmissions and

vehicle frame parts were stored directly on the ground uncovered. Also, the floor of the auto dismantling shed was covered in oil and grease.

84.     On September 10, 2018, the Facility was re-inspected by Regional Water Board inspectors Jenna Yang and Mike Fischer in response to a complaint the Water Board received that the Facility was cleaning the greasy bay/shop floor with gasoline, which it then allowed to flow into the storm drain in front of the bay.

85.     During the inspection, Regional Water Board staff observed liquid in the storm drain in front of the dismantling bay. A damaged oil absorbent sock was observed near the storm drain drop inlet. The liquid observed in the storm drain drop inlet was a dark in color, had a hydrocarbon odor and appeared to be stagnant.

86.     Waste oil and antifreeze were observed stored in a tank and drum, which did not have appropriate hazardous waste labels and did not list the waste accumulation start date. Board staff did not observe a waste storage container for gasoline. An employee of Defendant EURO AUTO RECYCLING stated that the gasoline from the cars the Facility dismantles is used in the Facility's forklift; however, the forklift the Water Board inspectors observed operated on propane.

87.     Information available to EDEN indicates that as a result of the above-referenced practices of the Facility, storm water containing excessive pollutants is being discharged during rain events from the Facility to the Sacramento River.

Discharges of Contaminated Storm Water

88.     Since commencement of Facility operations on or about August 1, 2016, Defendants have failed to collect and analyze even one Facility storm water run-off sample.

89.     Information available to EDEN indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.  Specifically, on September 27, 2018, the Regional Water Board issued Defendants a Notice of Violation for unauthorized non-storm water discharges.

90.     Due to the nature of the operations at the Facility, coupled with the documented lack of proper BMP implementation and unauthorized non-storm water discharges, Defendants are discharging storm water containing excessive levels of pollutants specific to their operation during at least every significant local rain event.  These pollutants include motor oil, gasoline, hydraulic fluids, oil & grease, total suspended solids, lead, aluminum and iron.

Failure to Comply with a Mandate of the Regional Water Board

91.     On September 27, 2018, the Regional Water Board issued a Notice of Violation to EURO AUTO RECYCLING for inadequate BMP implementation and unauthorized non-storm water discharges.

92.     The Notice of Violation required that EURO AUTO RECYCLING submit into the SMARTS system by October 29, 2018, photographic evidence that the liquid in the storm drain inlet had been cleaned up, along with a narrative description of how the liquid got into the storm drain, how it was cleaned up, and how similar discharges would be prevented in the future.

93.     The Notice of Violation also required that Defendants prepare and upload to SMARTS an updated SWPPP and site map and documentation of training for its Pollution Prevention Team.

94.     The Notice of Violation further required that Defendants file their outstanding

2016-17 and 2017-18 Annual Reports.

95.     Finally, the Notice of Violation required that Defendants upload to SMARTS a

narrative explanation of why storm water samples had not been collected and analyzed at the

Facility.

96.     To date, EURO AUTO RECYCLING has failed to comply with the above-listed

mandates of the Regional Water Board.

**FIRST CAUSE OF ACTION**
**Failure to Prepare, Implement, Review, and Update**
**an Adequate Storm Water Pollution Prevention Plan**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

97.     Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set

forth herein.

98.     The General Permit requires dischargers of storm water associated with

industrial activity to develop and implement an adequate SWPPP.

99.     As outlined herein, Defendants have failed to develop and implement an

adequate SWPPP for the Facility.

100.    Each day since August 1, 2016, that Defendants have failed to develop,

implement and update an adequate SWPPP for the Facility is a separate and distinct violation

of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all

Defendants.

///

///

///

**SECOND CAUSE OF ACTION**
**Failure to Develop and Implement an**
**Adequate Monitoring and Reporting Program**
**(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

101.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

102.    The General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including sampling and analysis of discharges) that complies with the terms of the General Permit.

103.    As outlined herein, Defendants have failed to develop and implement an adequate monitoring and reporting program for its Facility.

104.    Defendant EURO AUTO RECYCLING's ongoing failure to develop and implement an adequate monitoring and reporting program are evidenced by its failure to collect storm water samples pursuant to the requirements of the General Permit.

105.    Each day since at least August 1, 2016, that Defendants have failed to develop and implement an adequate monitoring and reporting program for its Facility in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all Defendants. The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

106.    Noncompliance with the General Permit constitutes a violation of the CWA against all Defendants. General Permit § XXI.A; 33 U.S.C. § 1342.

///

///

**THIRD CAUSE OF ACTION**
**Failure to Submit Annual Reports to the Regional Water Board**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

107.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

108.    The General Permit requires that all Dischargers certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year.

109.    As delineated herein, EURO AUTO RECYCLING has failed to file its Annual Report for the reporting year 2016-17.

110.    As delineated herein, EURO AUTO RECYCLING has failed to file its Annual Report for the reporting year 2017-18.

111.    Each day since July 15, 2017, that Defendants have failed to submit EURO AUTO RECYCLING's Annual Reports to the Regional Water Board in a timely manner is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all Defendants.

**FOURTH CAUSE OF ACTION**
**Failure to Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

112.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

113.    The General Permit's SWPPP requirements and Effluent Limitation V(A) of the General Permit require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

114.    Defendants failed to implement BAT and BCT at the Facility for its discharges of Iron, TSS, Lead, Gasoline, Oil & Grease, Hydraulic Fluids, Aluminum, and other potentially un-monitored pollutants, in violation of Effluent Limitation V(A) of the General Permit.

115.    Each day since at least August 1, 2016, that Defendants have failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all Defendants.

**FIFTH CAUSE OF ACTION**
**Discharges of Contaminated Storm Water**
**in Violation of Permit Conditions and the Act**
**(Violations of 33 U.S.C. §§ 1311, 1342)**

116.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

117.    Discharge Prohibition III(C) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water VI(B) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment. Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

118.    Plaintiff is informed and believes, and thereupon alleges, that since at least August 1, 2016, Defendant EURO AUTO RECYCLING has been discharging polluted storm water from the Facility, in excess of applicable water quality standards in violation of Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the General Permit.

119.     During every rain event, storm water flows freely over exposed materials, waste products, and other accumulated pollutants at both facilities, becoming contaminated with iron, sediment, zinc, nitrates, phosphorus and other potentially un-monitored pollutants at levels above applicable water quality standards.  The storm water then flows untreated into Sacramento River.

120.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitations of the General Permit.

121.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitations of the General Permit.

122.     Every day since at least August 1, 2016, that Defendant EURO AUTO RECYCLING has discharged and continues to discharge polluted storm water from its Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all Defendants.  These violations are ongoing and continuous.

### SIXTH CAUSE OF ACTION
### Failure to Comply with the Mandates of the Regional Water Board
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

123.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

124.     Regional Water Boards have general authority to enforce the provisions and requirements of the General Permit, including reviewing SWPPPs, Monitoring Implementation Plans, ERA Reports, and Annual Reports and requiring Dischargers to revise and re-submit

PRDs, conducting compliance inspections, and taking enforcement actions.   General Permit Section XIX

125.     On September 27, 2018, the Central Valley/San Francisco Bay Regional Water Quality Control Board issued Defendant EURO AUTO RECYCLING a Notice of Violation requiring that on or before October 29, 2018, EURO AUTO RECYCLING upload into SMARTS an adequate SWPPP and Site Map that fully complied with the General Permit, file its outstanding 2016-17 and 2017-18 Annual Reports, implement proper BMPs, provide its employees with storm water training and commence a compliant monitoring program, including collecting and analyzing storm water run-off samples.

126.     To date, EURO AUTO RECYCLING has failed to comply with those mandates.

127.     Each day since October 30, 2018, that Defendants have failed to comply with the mandates of the Regional Water Board is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a) against all Defendants.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.     Declare Defendants to have violated and to be in violation of the CWA;

2.     Issue an injunction ordering Defendants to immediately operate the Facility in compliance with the NPDES permitting requirements contained in the General Permit and the CWA;

3.     Enjoin Defendants from discharging pollutants from Defendant EURO AUTO RECYCLING's Facility to the surface waters surrounding the Facility until such time as EURO

AUTO RECYCLING has developed and implemented an adequate SWPPP and implemented appropriate BMPs;

4. Order Defendants to pay civil penalties of $51,570 per day/per violation for each violation of the Act pursuant to 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1, 19.2-19.4;

5. Order Defendants to take appropriate actions to restore the quality of United States waters impaired by its activities at EURO AUTO RECYCLING's Facility;

6. Order Defendants to pay EDEN's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and;

7. Award such other and further relief as may be just and proper.

Dated:  March 18, 2019                           Respectfully,


                                                 By:   */S/ Craig A. Brandt*_____
                                                       Craig A. Brandt

COMPLAINT – Page 27